**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 1:19-cv-01404-RM

DETROIT LEE ALDEN,

      Plaintiff,

v.

COMMISSIONER, Social Security Administration,

      Defendant.

---

## ORDER

---

    This matter is before the Court on Plaintiff's request for judicial review pursuant to

42 U.S.C. § 405(g) of Defendant's denial of his applications for disability insurance benefits and

supplemental security income. (ECF No. 1.) The parties have fully briefed the matter (ECF

Nos. 13, 14, 15), and the Court has reviewed the pleadings, case file, and applicable law. The

Court affirms the Commissioner's decision for the reasons below.

## I.    BACKGROUND

    Plaintiff filed his applications in April 2016, alleging disability beginning on February 1,

2016. After a hearing at which Plaintiff testified and was represented by counsel, an

administrative law judge ("ALJ") issued a decision denying his claims on July 9, 2018.

    The ALJ applied the five-step process for evaluating disability claims. *See Wall v.

Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (ECF No. 10-2 at 17.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: right eye blindness, post-traumatic stress disorder, and depression.  (*Id.*)

At step three, the ALJ determined that Plaintiff's impairments, considered independently and in combination, did not meet or equal the severity of a listed impairment.  (*Id.* at 18.)

Before reaching step four, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform medium work, subject to some limitations.  As defined in 20 C.F.R. § 404.1567(b), "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  The ALJ further limited Plaintiff's RFC as follows:

> [Plaintiff] can never climb ladders, ropes, or scaffolds.  He can never be exposed to unprotected heights, hazardous machinery, or concentrated exposure to environmental irritants.  He cannot operate a motor vehicle for commercial purposes.  He cannot perform a job that requires binocular vision.  He is limited to simple, routine tasks with occasional changes to the work setting.  He is limited to occasional interaction with coworkers, supervisors, and the general public.

(ECF No. 10-2 at 19.)

At step four, the ALJ determined Plaintiff could not perform any of his past relevant work.  (*Id.* at 25.)

At step five, the ALJ determined that given Plaintiff's age, education, work experience, and RFC, he could perform jobs that exist in significant numbers in the national economy, including medical cleaner, launder laborer, and housekeeping cleaner.  (*Id.* at 26.)

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final.  *See* 20 C.F.R. § 404.981.

Plaintiff argues that the ALJ erred by failing to provide valid reasons for limiting the weight she gave to the medical opinion of Dr. David Benson, a consultative examiner, and by failing to account for all the limitations assessed by Dr. James Sturgis, a state agency psychologist.

## II.    LEGAL STANDARD

The Court reviews the ALJ's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052 (quotation omitted). To determine whether the substantiality test has been met, the Court meticulously examines the record as a whole, including anything that may undercut or detract from the ALJ's findings, but the Court does not reweigh the evidence or retry the case. *Id.* "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

## III.    DISCUSSION

### A.    Dr. Benson's Opinion

After conducting a consultative psychological examination of Plaintiff in August 2016, Dr. Benson opined that Plaintiff had become "severely depressed after the development of visual problems from an accident" in 2008. (ECF No. 10-7, Psychological Examination at 52.)

Plaintiff contends the ALJ did not provide adequate reasons for giving limited weight to Dr. Benson's opinion.

"When assessing a medical opinion, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) and give good reasons for the weight [s]he assigns to the opinion." *Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015). Although § 404.1527(c) lists six factors for consideration—including the consistency between the opinion and the record as a whole—the ALJ is not required to expressly apply each factor. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Instead, the Court must ascertain whether the ALJ's decision makes clear the weight given to the opinion and the reasons for that weight. *Id.* If the Court can follow the ALJ's reasoning and determine that correct legal standards have been applied, "merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The ALJ found Dr. Benson's opinion was inconsistent with the evidence in the record in several respects. For example, Plaintiff's reported daily activities included interacting with a small group of friends, helping neighbors and doing small jobs around the neighborhood, keeping busy doing outside work, attending church, and trying to hang out with people more and be more social. The ALJ concluded that these activities suggested Plaintiff was not as limited as he alleged. The ALJ further found that Dr. Sturgis's opinion, also from August 2016, supported the inference that Plaintiff's limitations were more moderate than Dr. Benson had concluded. As Plaintiff points out, Dr. Benson was an examining medical source, and therefore his opinion was presumptively entitled to more weight than that Dr. Sturgis's, which was derived from a review of the medical record, *see Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). But that

presumption was overcome in this case, where both opinions, to varying degrees, were found to be inconsistent with the record as a whole.

Aside from his own subjective complaints and Dr. Benson's report, Plaintiff has not identified substantial evidence in the record that his depression prevented him from working.  A lack of objective verification is a factor for the ALJ to consider in assessing the value of the plaintiff's hearing testimony.  *See Keyes-Zachary*, 695 F.3d at 1168.  The ALJ noted that after initiating mental health care for depression and anxiety in 2013, Plaintiff did not seek treatment in the form of medication or therapy from 2014 to 2017, suggesting that "he was stable during this period."  (ECF No. 10-2 at 24.)  A significant lack of continuous treatment for a condition may undermine a plaintiff's subjective complaints about the condition.  *See Angel v. Barnhart*, 329 F.3d 1208, 1213 (10th Cir. 2003); *see also Keyes-Zachar*y, 695 F.3d at 1167 (noting that in assessing a plaintiff's credibility, an ALJ should consider his persistent attempts to find relief, willingness to try any prescribed treatment, and regular contact with a doctor).

In January 2017, Plaintiff reported that after trying to handle his depression on his own, he decided that he might benefit from attending monthly therapy.  Once Plaintiff resumed treatment, his mental status evaluations indicate that he assessed his depression as being at a four or five on a ten-point scale.  Treatment notes from the VA support the ALJ's implicit determination that Plaintiff's depression was being managed effectively with treatment.  At his mental status evaluations, he repeatedly reported that he was doing "good" or "okay" and was repeatedly assessed as being "attentive, oriented, polite, open, and cooperative," as well as having good hygiene and grooming and normal thought processes.  (ECF No. 10-2 at 21-22.) Although these evaluations began several months after Dr. Benson's August 2016 examination

of Plaintiff, Plaintiff has identified no intervening events or significant changes in his condition between 2016 and 2017, and therefore the evaluations support the inference that Plaintiff was not as severely depressed as Dr. Benson believed. This evidence, along with Plaintiff's reported daily activities, provided a sufficient basis for the ALJ to conclude that Plaintiff's depression was not severe enough, either before or after he resumed treatment, to prevent him from working. Even if different conclusions could be drawn from the evidence, the Court's role is to review merely the sufficiency of the evidence, not its weight. *Oldham*, 509 F.3d at 1257. Accordingly, the Court finds the ALJ provided adequate reasons for concluding the Dr. Benson's opinion overstated Plaintiff's limitations in some respects and for giving it limited weight.[1]

Plaintiff also contends the ALJ erred by ignoring Dr. Benson's determination that Plaintiff had marked impairment in his ability to respond appropriately to usual work situations, a requirement for unskilled work. As discussed above, the ALJ adequately explained why she limited the overall weight she gave to Dr. Benson's opinion. Although that conclusion provides an adequate basis for the ALJ to disregard Dr. Benson's determination, the Court further finds that crediting this aspect of Dr. Benson's opinion would not have helped Plaintiff. *See Keyes-Zachary*, 695 F.3d at 1163 (applying harmless-error analysis when no reasonable factfinder could have resolved factual matter differently). When asked about whether the ability to respond appropriately would eliminate jobs an individual could do, the vocational expert gave a relative answer, explaining that "[t]he more dramatic, the more inappropriate the reaction, the less tolerant employers are typically going to be." (ECF No. 10-2 at 53.) The vocational expert

---

[1] Plaintiff notes that the ALJ's RFC assessment and Dr. Benson's opinion "align in certain ways" (ECF No. 13 at 13) but fails to explain how the ALJ's acceptance of parts of the opinion affects the required analysis or undermines her decision to give limited weight to the opinion overall.

mentioned disruptive outbursts and reacting with abusive language as examples of conduct that employers would be unlikely to tolerate. Although Plaintiff testified that he tended to isolate himself, disliked being around others, and could get irritable, he has not identified any evidence that he was prone to the type of inappropriate responses the vocational expert opined would preclude him from performing unskilled work. Thus, he has not shown that the ALJ's conclusion that he could still do unskilled work was inconsistent with his degree of impairment in his ability to respond appropriately to usual work situations.

### B.      Dr. Sturgis's Opinion

Plaintiff contends the ALJ erred by failing to account for all the limitations assessed by Dr. Sturgis. According to Dr. Sturgis's opinion, Plaintiff could "interact with peers and supervisors on a very superficial, work basis" but could not "interact with the general public." (ECF No. 10-3, Disability Determination Explanation at 14.) The ALJ gave "some weight" to Dr. Sturgis's overall opinion, and, in assessing Plaintiff's RFC, found he could occasionally interact with coworkers, supervisors, and the general public. (ECF No. 10-2 at 24.)

"[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). As noted above, Plaintiff reported interacting with a small group of friends, helping neighbors and doing small jobs around the neighborhood, keeping busy doing outside work, attending church, and trying to hang out with people more and be more social. The ALJ appropriately considered these activities of daily living when she determined Plaintiff's RFC, noting that they were inconsistent with Dr. Sturgis's conclusory determination—not supported by a narrative explanation—that Plaintiff could not interact with the general public at all. (*See* ECF No. 10-3 at 64-65.) The

Court will not reweigh the evidence. *Wall*, 561 F.3d 1052. The ALJ's determination that Plaintiff could occasionally interact with coworkers, supervisors, and the general public is supported by substantial evidence. Thus, on this record, the ALJ was not required to fully adopt Dr. Sturgis's assessment and impose a stricter limitation on Plaintiff's ability to interact with the general public.

## IV. CONCLUSION

Accordingly, the Court AFFIRMS the Commissioner's decision.

DATED this 22nd day of November, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge